Robert WILSON, et al., Appellant,

v.

UNITED STATES GOVERNMENT,
Defendant, Appellee.

No. 93–2025.

United States Court of Appeals,
First Circuit.

Heard March 11, 1994.

Decided May 4, 1994.

Osvaldo Perez–Marrero, Hato Rey, PR, for appellant.

David V. Hutchinson, Asst. Director, Admiralty Torts Branch, Civ. Div., with whom Frank W. Hunger, Asst. Atty. Gen., Guillermo Gil, U.S. Atty., Washington, DC, and Fidel Sevillano, Asst. U.S. Atty., Hato Rey, PR, were on brief for appellee.

Before CYR and STAHL, Circuit Judges, and PIERAS,* District Judge.

* Of the District of Puerto Rico, sitting by designation.

STAHL, Circuit Judge.

More than two years after suffering an injury at sea, plaintiff-appellant Robert Wilson[1] attempted to amend his complaint against a private party to include the United States as defendant. The amended complaint sought damages under the Public Vessels Act and the Suits in Admiralty Act, both of which carry a two-year statute of limitations. The district court dismissed the claims as time-barred, declining to apply either equitable tolling, or Fed.R.Civ.P. 15(c)'s "relation back" provisions. Finding no error, we affirm.

## I.

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

On September 10, 1988, Wilson, an employee of General Electric Government Services, Inc. (hereinafter "GEGS"), whose job entailed maintaining a fleet of Seaborne Powered Target Boats (hereinafter "SEPTARs") for the United States Navy, was sent to sea by GEGS, along with several other employees, in a SEPTAR. Wilson and the other crew members became stranded in Hurricane Gilbert and required rescue by the Coast Guard.

On September 30, 1988, and again on November 23, 1988, counsel for Wilson wrote to United States Navy officials requesting transcripts of radio communications recorded during the stranding incident. Counsel also requested the results of any Navy investigations regarding the incident. These letters did not allude in any manner to the possibility that the United States might be a party in any capacity to any legal proceeding. In fact, at the time the requests were sent, no complaint against any party had yet been filed.

On September 8, 1989, almost a year after these requests to the Navy, Wilson and other crew members filed suit against GEGS under the Jones Act, 46 U.S.C. § 688, for injuries

allegedly suffered in the stranding incident. The United States received no notice of these suits, nor was the United States, or any of its departments or agencies, named as a party. On April 2, 1990, GEGS moved for summary judgment, arguing that the United States Navy owned the SEPTAR on which Wilson and the others were injured, and that therefore the United States was the only proper party in interest.

In response to GEGS's motion for summary judgment, Wilson filed a motion on June 8, 1990, requesting that GEGS be dismissed from the suit and that the United States be substituted as defendant. On June 19, 1990, the district court dismissed GEGS from the suit and granted Wilson's motion to amend his complaint.

Though the district court had granted leave for Wilson to amend his complaint, more than two months elapsed and Wilson had still not filed an amended complaint. On September 10, 1990, two years to the day after the stranding incident, the court notified Wilson that he had until September 24, 1990, i.e., fourteen days from the date of the order, to file an amended complaint, or the action would be dismissed for lack of prosecution. It is important to note that when the court issued this deadline, the United States had received no notice that it would be named a party to the suit and the amended complaint had not yet been filed. Thus, as far as the record indicates, no statute of limitations issue was before the district court when it set the September 24, 1990, deadline.

The amended complaint was filed on September 25, 1990,[2] the day *after* the deadline imposed by the district court. It alleged liability under the Public Vessels Act, 46 U.S.C. §§ 781–90 and the Suits in Admiralty Act, 46 U.S.C. §§ 741–52. Suits under these statutes carry a two-year statute of limitations. Along with the amended complaint, Wilson filed a motion requesting the court to "relate back" the filing date of the amended

---

1. Wilson, one of several plaintiffs below, is the only plaintiff to pursue appeal.

2. Wilson's brief misleadingly states that the amended complaint was filed on September 24, 1990. The court docket and the magistrate's

report, however, both list September 25, 1990 as the filing date of the amended complaint. Furthermore, the amended complaint included in the Wilson's appendix is date stamped by the clerk's office "1990 SEP 25 AM 9:51."

complaint to that of the original complaint. The United States was not served with the complaint until November 16, 1990, fifty-two days after the amended complaint was filed.

On January 8, 1991, the United States moved to dismiss the action as time-barred. The matter was then referred to a magistrate who found that Wilson had indeed missed the two-year statute of limitations and had provided no basis for either relating back the filing date of the amended complaint, or for equitably tolling the limitations period. On June 30, 1993, the district court adopted the magistrate's findings and dismissed the action as time-barred. Wilson appeals from this ruling.

## II.

### DISCUSSION

■ Both the Suits in Admiralty Act and the Public Vessels Act apply when a plaintiff brings a "public-vessel-related suit in admiralty against the United States." *Justice v. United States*, 6 F.3d 1474, 1475 (11th Cir.1993). Causes of action under both Acts "may be brought only within two years after the cause of action arises." 46 U.S.C. § 745. A cause of action "arises" under both Acts on the date of injury. *See, e.g., McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951) ("[W]e think it clear that the proper construction of the language used in the Suits in Admiralty Act is that the period of limitation is to be computed from the date of the injury."); *Justice*, 6 F.3d at 1475 (stating that the Public Vessels Act incorporates the statute of limitations of the Suits in Admiralty Act).[3]

There is no dispute that the original complaint against GEGS was timely filed, nor can it be disputed that the amended complaint which named the United States as a party was first filed more than two years after the date of injury. Wilson offers two

grounds for arguing that the amended complaint should nonetheless be viewed as timely. First, Wilson argues that the two-year statute of limitations should be equitably tolled. Second, he argues that the amended complaint should be deemed to "relate back" to the date of filing of the original complaint under Fed.R.Civ.P. 15(c). We address these arguments in turn.

### A. Equitable Tolling

■ Federal courts have allowed equitable tolling only sparingly. *Irwin v. Veterans Admin.*, 498 U.S. 89, 94, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). For example, such tolling has been allowed where the claimant actively pursued a timely yet defective pleading, or where the complainant was tricked by his adversary's misconduct into allowing a deadline to pass. *See id.* at 96, nn. 3 & 4, 111 S.Ct. at 457–58 nn. 3 & 4 (compiling cases). Where, on the other hand, " 'the claimant [fails] to exercise due diligence in preserving his[/her] legal rights,' courts are reluctant to apply principles of equitable tolling to extend a federal limitations period." *De Casenave v. United States*, 991 F.2d 11, 13 (1st Cir.1993) (quoting *Irwin*, 498 U.S. at 96, 111 S.Ct. at 458).

In this case, Wilson's failure at more than one juncture to exercise due diligence proves fatal to his request for equitable tolling. First, Wilson asks us to toll the statute of limitations because he purportedly was unaware at the time he filed suit that the United States, rather than GEGS, owned the SEPTAR on which he was injured. He further states that GEGS's delay in filing a motion for summary judgment on these grounds caused undue delay in determining the ownership of the SEPTAR, which in turn warrants equitable tolling.

The magistrate's report points out, however, that the ownership of the SEPTAR easily

---

**3.** The Public Vessels Act incorporates provisions of the Suits in Admiralty Act, "insofar as the same are not inconsistent" with the Public Vessels Act. 46 U.S.C. § 782. This includes the two-year statute of limitations. *See, e.g., Justice*, 6 F.3d at 1475; *Favorite v. Marine Personnel and Provisioning, Inc.*, 955 F.2d 382, 385, 388–89 (5th Cir.1992) (applying Suits in Admiralty Act's two-year limitation in case involving claims un-

der both the Public Vessels Act and Suits in Admiralty Act). Wilson's brief alludes vaguely to the notion that the two-year statute of limitations in the Public Vessels Act operates in a manner different from the statute of limitations in the Suits in Admiralty Act. We have found no support for this argument, either in the statutes themselves or in the cases interpreting these statutes.

could and should have been determined through routine discovery. Wilson offers no evidence to the contrary. Nor does he allege any trickery or other questionable motive on the part of GEGS. In fact, there is no evidence in the record tending to show that GEGS was dilatory in alerting the district court that the United States owned the SEPTAR. Similarly, there is no record evidence showing that Wilson made any attempt to ascertain who owned the SEPTAR, nor is there any evidence that Wilson pursued discovery on this, or any other issue in this case. In sum, nothing in the record controverts the magistrate's finding that the issue of ownership could have been made known through routine discovery procedures. Thus, we see no reason to toll the statute of limitations based on the actions of GEGS in this case. *Cf. Favorite v. Marine Personnel and Provisioning, Inc.*, 955 F.2d 382, 388 (5th Cir.1992) (declining to equitably toll two-year statute of limitations under the Suits in Admiralty Act and the Public Vessels Act where plaintiff "waited to bring suit only because he believed he could sue . . . his private employer[ ] under the three-year statute of limitations in the Jones Act").

More important than Wilson's initial failure to ascertain the identity of the SEPTAR's owner, however, is the fact that Wilson *did* learn of the actual ownership of the SEPTAR more than five months before the statute of limitations expired, i.e., when GEGS filed its motion for summary judg-

ment. Still, Wilson did not amend his complaint. In fact, Wilson filed the amended complaint only *after* the district court threatened to dismiss the case for lack of prosecution. Wilson offers no reason or excuse for this delay. We see no basis for extending the exceptional doctrine of equitable tolling to a party who, by all accounts, merely failed to exercise his rights. *Cf. Puleio v. Vose*, 830 F.2d 1197, 1203 (1st Cir.1987) ("The law ministers to the vigilant, not to those who sleep upon perceptible rights."), *cert. denied*, 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988). In sum, the record before us reflects that Wilson failed to exercise due diligence in pursuing his claim, and thus we see no grounds for applying the doctrine of equitable tolling.

### B. "Relation Back" Under Fed.R.Civ.P. 15(c)

■ Wilson's claim under Fed.R.Civ.P. 15(c) fares no better. When a plaintiff amends a complaint to add a defendant, but the plaintiff does so *subsequent* to the running of the relevant statute of limitations, then Rule 15(c)(3) controls whether the amended complaint may "relate back" to the filing of the original complaint and thereby escape a timeliness objection.[4]

We begin by noting that Wilson failed to meet one of Rule 15(c)(3)'s mechanical requirements, namely, that, within 120 days of the filing of the original complaint,[5] "the party to be brought in by amendment . . .

---

**4.** Rule 15(c) states:

> An Amendment of a pleading relates back to the date of the original pleading when
>  (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>  (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>  (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity

of the proper party, the action would have been brought against the party.
> The delivery or mailing of process to the United States Attorney, or United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of subparagraphs (A) and (B) of this paragraph (3) with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

**5.** Fed.R.Civ.P. 4(m), cited in Rule 15(c), states:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time

received such *notice of the institution of the action* that the party will not be prejudiced in maintaining a defense on the merits." (Emphasis supplied). The record shows that the United States received notice of this action no earlier than November 16, 1990, the date that it was served with the amended complaint.

In arguing that the United States nonetheless had adequate notice of the claim against GEGS, Wilson points only to his counsel's requests for radio transcripts and investigation results from the Navy. These requests occurred some nine months *prior* to the institution of the action against GEGS. Moreover, the correspondence does not advert, formally or informally, to the *institution* of any action against the United States or any other party. Accordingly, we find no means in the record to conclude that the United States ever received timely notice of the institution of the suit against GEGS. Without this timely notice, Rule 15(c)(3)'s relation back provisions cannot apply.[6]

An additional requirement for relation back under Rule 15(c)(3) is that the party to be added by amendment "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." There is no basis for imputing such knowledge to the United States on the record before us.

 Finally, the Seventh Circuit has recently reiterated that

"amendment [of a complaint] with relation back is generally permitted in order to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued. But a new defendant cannot normally be substi-

tuted or added by amendment after the statute of limitations has run."

*Worthington v. Wilson,* 8 F.3d 1253, 1256 (7th Cir.1993) (quoting *Wood v. Woracheck,* 618 F.2d 1225, 1229 (7th Cir.1980)). Put another way, Rule 15(c)(3) " 'permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, *there is a lack of knowledge of the proper party.*' " *Id.* (quoting *Wood,* 618 F.2d at 1230) (emphasis supplied).

In this case, there was no "mistake concerning the identity of the proper party," as required by Rule 15(c)(3). Rather, Wilson merely lacked knowledge of the proper party. In other words, Wilson fully intended to sue GEGS, he did so, and GEGS turned out to be the wrong party. We have no doubt that Rule 15(c) is not designed to remedy such mistakes.

█ To the extent that Wilson raises any other issues, he does so in a perfunctory manner, with no attempt at developed argumentation. Such issues may be deemed waived. *See Romero Lama v. Borras,* 16 F.3d 473, 481 n. 12 (1st Cir.1994).

### *III.*

### *CONCLUSION*

For the foregoing reasons, the order of the district court dismissing Wilson's claims against the United States is

*Affirmed. Costs to appellees.*

█

---

for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

**6.** In addition, Wilson cites the "identity-of-interest" gloss on Rule 15(c) which we endorsed in *Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 102–03 (1st Cir.1979). We stated there that "the institution of the action serves as constructive notice of the action to the parties added after the limitations period expired, when the original and added parties are *so closely related in business or other activities* that it is fair to presume the

added parties learned of the institution of the action shortly after it was commenced." *Id.* To support his argument that the United States had such constructive notice in this case, Wilson cites only the contract between the Navy and GEGS which governed the operation of the SEPTARs. Without more, this contract does not permit a conclusion that the United States and GEGS were so closely related in business that the United States can be presumed to have received notice of the case against GEGS, nor does any other record evidence support such a conclusion.