James MAGDALENSKI, Administrator of
the estate of Walter J. Magdalenski,
Plaintiff,

v.

UNITED STATES GOVERNMENT,
Defendant.

Civil Action No. 95–30124–MAP.

United States District Court,
D. Massachusetts.

Sept. 5, 1997.

Walter Magdalenshi, Easthampton, MA,
pro se.

Stephen Ferrarone, Springfield, MA, for
Walter J. Magdalenski, James Magdalenski.

Karen L. Goodwin, U.S. Atty.'s Office, Springfield, MA, for U.S. Government.

POSNOR, District Judge.

Upon *de novo* review, this Report and Recommendation is hereby adopted and defendant's motion is ALLOWED. Despite counsel's vigorous arguments, it is clear that the complaint is untimely. The clerk will enter judgment for defendant. So ordered.

## REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 10)

August 18, 1997

NEIMAN, United States Magistrate Judge.

### I. INTRODUCTION

Pursuant to Fed.R.Civ.P. 56(b), the United States Government ("Defendant") has moved for summary judgment on the complaint of James Magdalenski ("Plaintiff"), Administrator of the Estate of Walter J. Magdalenski ("Magdalenski"), on grounds, among others, that Plaintiff's claim is barred by the statute of limitations. Defendant's motion has been referred for a report and recommendation pursuant to Rule 3 of the Rules of the United States Magistrates in the United States District Court for the District of Massachusetts. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that Defendant's motion be allowed.

### II. STANDARD OF REVIEW

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. *McIntosh v. Antonino,* 71 F.3d 29, 33 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A disputed fact is genuinely at issue if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992) (citation and internal quotation marks omitted). "A fact is material if it 'carries with it the potential to affect the outcome of the suit under applicable law.'" *One Nat'l Bank v. Antonellis,* 80 F.3d 606, 608 (1st Cir.1996) (quoting *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993)). Once the moving party has demonstrated that no genuine issue of material fact exists, the burden shifts to the non-moving party to point "to specific facts demonstrating that there is, indeed, a trialworthy issue." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995). The facts, and all reasonable inferences that may be drawn from them, must be viewed in the light most favorable to the non-moving party. *See Guzman–Rivera v. Rivera–Cruz,* 29 F.3d 3, 4 (1st Cir.1994).

### III. FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 1977, Magdalenski underwent a cholecystectomy to remove his gallbladder at the Boston Veteran's Administration ("V.A.") hospital. Approximately two weeks after the operation, Magdalenski developed salmonella and, over the next two months, underwent five T-tube cholangiograms, with the final one indicating an air pocket. An endoscopic retrograde cholangiopancreatography ("ERCP") was not performed, although the procedure was available. Thereafter, Magdalenski was admitted to the same hospital in 1980, 1981 and 1983 with abdominal pain. Examinations did not reveal a cause for the pain. He believed that the pain was a normal result of the removal of his gallbladder.

In April of 1988, Magdalenski again experienced severe abdominal pain and sought treatment at the V.A. hospital in Leeds, Massachusetts. The attending physician diagnosed the problem as ethanol-induced hepatitis. On October 26, 1988, Magdalenski underwent an ERCP and sphincterotomy at the Boston V.A. hospital, during which a one-centimeter stone was removed from his common bile duct. This procedure was repeated in April of 1989, and two stones were found. On May 24, 1991, a third ERCP was performed and more stones were removed.

On November 27, 1989, Magdalenski requested in writing that the Disabled American Veterans ("DAV") organization file a claim for him under 38 U.S.C. § 351 ("section 351"). Section 351, now codified as 38 U.S.C. § 1151, treats as a service-connected injury a veteran's disability caused by hospital, medical or surgical treatment furnished a veteran by a V.A. employee or in a V.A. facility. On January 5, 1990, a National Service Officer with the DAV, filed Magdalenski's claim with an adjudication officer of the V.A.'s Boston office.

Several years later, on December 22, 1993, Magdalenski filed an administrative claim under the Federal Tort Claims Act ("FTCA") arising out of the same medical treatment. An FTCA claim seeks money damages against the United States for personal injury caused by the negligent or wrongful act or omission of a Government employee while acting within the scope of his office. The claim was denied on January 5, 1995. Acting *pro se*, Magdalenski then filed a complaint with this court. Magdalenski's earlier section 351 claim was not acted upon until July 17, 1995, at which time it was also denied.

Following Magdalenski's death on June 11, 1996, his son James Magdalenski retained an attorney and became the administrator of his father's estate. The estate was substituted as plaintiff on February 11, 1997. A hearing on Defendant's motion for summary judgment was held on July 29, 1997.

## IV. DISCUSSION

Defendant contends that Plaintiff's claim is barred by the statute of limitations because (i) the claim accrued in 1977, long before Magdalenski's FTCA claim was filed; (ii) Magdalenski's letter of November 27, 1989 was not itself an FTCA claim; (iii) even if the November 27, 1987, letter were an FTCA claim, it did not satisfy FTCA requirements; and (iv) there are no grounds for equitable tolling with reference to the FTCA claim filed by Magdalenski on December 22, 1993.[1] The Court addresses Defendant's claims *seriatim*.

### 1.

Defendant first asserts that Plaintiff's claim accrued in 1977 once he was "in possession of the critical facts that he ha[d] been injured and who ha[d] inflicted the injury." *United States v. Kubrick,* 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979). *Accord Nicolazzo v. United States,* 786 F.2d 454, 457 (1st Cir.1986) Specifically, Defendant contends that Magdalenski had an obligation to investigate the cause of his abdominal pain immediately following his cholecystectomy earlier that year. Since a tort claim against the United States must be presented in writing to the appropriate agency within two years after such claim accrues, 28 U.S.C. § 2401(b), Defendant asserts that Magdalenski's claim needed to be filed no later than January 19, 1979, two years after his surgery. Since Plaintiff filed his FTCA claim in 1993, long past the statutory period, Defendant claims, Plaintiff's suit is barred.

Defendant's arguments to the contrary, the Court cannot state, as a matter of law, that Plaintiff's claim accrued in 1977. Instead, the Court believes it likely that the accrual date arose only after stones were discovered in Magdalenski's common bile duct in October of 1988, not when he first experienced pain following his cholecystectomy in 1977. Magdalenski attempted to find the source of the abdominal pain and was admitted to the V.A. hospital on numerous occasions for that purpose. However, no examining physician performed an ERCP or correctly diagnosed the cause of his pain

---

1. In addition to asserting a defense under the statute of limitations, Defendant originally sought summary judgment on grounds that Magdalenski, then appearing *pro se*, had not provided a medical expert in support of his claim. After Magdalenski's death, however, his estate retained a medical expert. Defendant now acknowledges that the expert has raised material questions of fact, at least with regard to whether Magdalenski's abdominal pain from January of 1977 through October of 1988 was the result of Defendant's failure to diagnose retained stones in the common bile duct. Defendant still contends, however, that the expert did not address Magdalenski's claim of an improperly performed cholecystectomy, inadequate post-operative care and post–1988 abdominal pain. In any case, the Court has chosen not to address these latter assertions because, as explained *infra,* Defendant's motion for summary judgment succeeds on statute of limitations grounds alone.

until October 26, 1988, when a stone was found in his common bile duct. *See Nicolazzo,* 786 F.2d at 456 (claim accrues only when plaintiff is correctly diagnosed, not when he is injured.) Thus, for purposes here, the Court assumes that the date of accrual was October 26, 1988. Plaintiff accepted this date at oral argument.[2]

### 2.

 The essence of Plaintiff's opposition is that Magdalenski filed an FTCA claim in a timely manner, *i.e.,* by October 26, 1990. There is no question that an FTCA claim on a standard form ("Form 95") was filed by Magdalenski on December 24, 1993, obviously well after the statutory period had ended. Nonetheless, Plaintiff claims that Magdalenski's letter of November 27, 1989, which he mailed to the DAV, was sufficient to meet FTCA prerequisites. In this regard, Plaintiff now contends that the Form 95 form he filed on December 24, 1993, was merely a supplement to his 1989 letter. Plaintiff's arguments fail.

As the documents themselves clearly demonstrate, Magdalenski knew the difference between an FTCA claim and a claim for benefits under section 351. Not only did his November 27, 1989, letter specifically request that a section 351 claim be filed, his Form 95 request for FTCA benefits was made only because he had not yet received a decision on his section 351 claim.[3] Moreover, there is no indication that Magdalenski intended his form 95 to supplement any earlier claim with

**2.** Magdalenski's *pro se* response to Defendant's motion for summary judgment raised the possibility, albeit in an ambiguous way, that the date of accrual may have been later.

**3.** Thus, as he stated when submitting his Form 95: "Please file the enclosed S.F. 95 form and *the attached report* for adjudication. Due to the complications in bringing my 351 claim to be heared [sic] and the length of time it is taking, I am also including this S.F. 95 claim." (Pl.'s Br., Ex. 1.)

**4.** According to the statute:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Govern-

information he may have neglected to provide.

### 3.

Even if Magdalenski's letter of November 27, 1989, could be construed as an FTCA claim, it does not satisfy certain claim requirements, most particularly, the requirement to state a sum certain. The FTCA mandates that a claim must be presented to the appropriate federal agency. 28 U.S.C. § 2675(a).[4] In turn, implementing regulations require that the claim be accompanied by a demand for a sum certain. 28 C.F.R. § 14.2(a).[5] Here, there is little argument that Magdalenski's 1989 letter does not make a claim for a sum certain.

Plaintiff asserts, however, that it is only necessary for a claim to provide information sufficient for the federal agency to initiate an investigation. Plaintiff relies on *Lopez v. United States,* 758 F.2d 806 (1st Cir.1985), for the proposition that "[t]he claims process is meant largely to furnish notice to the government sufficient to allow it to investigate the alleged negligent episode to determine if settlement would be in the best interests of all." *Id.* at 809–10. Only after the process of settlement has been initiated, Plaintiff asserts, does the sum certain required by 28 C.F.R. § 14.2(a) become relevant. Again, Plaintiff's arguments, unfortunately, fail.

 The claims process is indeed primarily designed to furnish sufficient notice to the federal agency to allow it to investigate

ment while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.
28 U.S.C. § 2675(a).

**5.** In pertinent part, the regulations provide as follows:

For purposes of the provisions of [Section] 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant ... an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.
28 C.F.R. § 14.2(a).

the alleged negligent episode in order to determine if settlement would be in the best interests of all parties. *Lopez*, 758 F.2d at 809–10. There are many reasons, however, why a demand for a sum certain is required. As the court in *Richland–Lexington Airport Dist. v. Atlas Properties, Inc.*, 854 F.Supp. 400 (D.S.C.1994) explained:

> [A]scertaining a sum certain apprises the agency of the propriety and efficacy of settlement. Also, definitely identifying the claim permits investigation into any insurance coverage the agency might have, as well as permits the agency to make a final disposition with respect to the claim. Additionally, if claimants were not compelled to provide a sum certain, they may "withhold vital information and hinder settlement in hopes of obtaining a better disposition in court." Finally, this requirement comports [with] other sections of FTCA.

*Id.* at 413 (quoting and citing *College v. United States*, 411 F.Supp. 738 (D.Md.1976), *aff'd*, 572 F.2d 453 (4th Cir.1978)). At bottom, a claim that does not provide information as to an individual's claimed damages is wholly deficient under the standards set forth in 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.2(a). *Suarez v. United States*, 22 F.3d 1064, 1066 (11th Cir.1994).

The First Circuit has consistently held that a timely-presented claim must state a sum certain for a court to have jurisdiction to entertain a suit against the United States under the FTCA. *See Coska v. United States*, 114 F.3d 319, 323 n. 8 (1st Cir.1997) (noting that "[a] federal court has no jurisdiction to entertain a suit against the United States unless a claimant has presented, in writing, a claim stating a sum certain"); *Santiago–Ramirez v. Secretary of the Dept. of Defense*, 984 F.2d 16, 19 (1st Cir.1993) (holding that § 2675 is satisfied if the claim includes, *inter alia*, "the amount of damages sought"); *Kokaras v. United States*, 980 F.2d 20, 21 (1st Cir.1992) (noting "the well-established rule that a timely-filed sum-certain claim is a prerequisite for jurisdiction of a tort action against the United States"). *See also Corte–Real*, 949 F.2d at 486 ("We agree fully with the Government as to the importance and absolute necessity of adherence to the sum

certain requirement."); *Gonzalez–Bernal v. United States*, 907 F.2d 246, 248 (1st Cir. 1990); *Lopez*, 758 F.2d at 809–10. The rule is the same in other circuits. *See Kokaras*, 980 F.2d at 22 (citing cases). On the other hand, as Plaintiff argues, the First Circuit does not tolerate "bureaucratic overkill" in implementing the sum certain requirement. *Corte–Real*, 949 F.2d at 486.

However, in all of the cases on which Plaintiff relies—many of which reflect some leniency regarding the sum certain requirement—significantly more information was provided the federal agency in compliance with statutory and regulatory requirements than Magdalenski furnished in the instant matter. In *Corte–Real* itself, for example, the First Circuit found that where a claim clearly states a specific sum and meets the sum certain requirements "in all respects but for concern over the possible detraction of improper surplusage of this insubstantial variety," there is "no reason not to strike the surplusage rather than the claim itself." *Id.*, 949 F.2d at 487. Likewise, in *Santiago–Ramirez*, the First Circuit found that a letter to a federal agency was sufficient to fulfill statutory requirements when it identified the claimant, the dates of injury, the locations, the Government agents involved, the type of injury alleged *as well as the amount of damages which the claimant was seeking. Id.* 984 F.2d at 20. As the First Circuit explained, "[t]he fact that the agency misunderstood [the claimant's] letter, choosing to interpret it solely as a belated appeal of an adverse administrative personnel action, should not prejudice [the claimant's] suit." *Id.* Similarly, in *Lopez*, the First Circuit held that an administrative claim that sought specific damages for brain injuries was sufficient to support a later claim for mental damages, even though the original claim did not explicitly assert that the demand related to mental as well as physical injuries. *Id.*, 758 F.2d at 808–09. The court emphasized, however, that its decision did not reflect any inclination to waive the regulatory requirement of stating a sum certain. *Id.* at 810.

Here, in stark contrast, Plaintiff's letter of November 27, 1989—which, again, explicitly made a claim under section 351—did not

state a sum certain nor any means by which such a sum could be ascertained. In addition, there was no reason for the Defendant to treat Magdalenski's 351 claim as an FTCA claim. Moreover, Magdalenski did not provide any documentation that would allow the federal agency to calculate or even estimate his damages. In this regard, this case is similar to *Kokaras,* in which the plaintiff neither claimed a sum certain nor provided documentation which lent itself to determining or even approximating such a sum. *Id.,* 980 F.2d at 22. Simply put, there is no First Circuit precedent allowing a claim to proceed when a claimant completely fails to assert a sum certain against the United States. *Cf. Coska,* 114 F.3d at 322. Rather, the First Circuit has consistently held that claimants must meet the requirements of 28 U.S.C. § 2675 and 28 C.F.R. § 14.2(a), even when the notice is less than ideal.

### 4.

Since his letter of November 27, 1989, cannot properly be considered an FTCA claim, Plaintiff alternatively contends that equitable tolling should be allowed so that his Form 95 of December 22, 1993, which otherwise met FTCA requirements, may be considered to have been filed within the statutory period. In essence, Plaintiff contends that, if Defendant had rendered its decision on Magdalenski's section 351 claim in a more timely fashion, rather than on July 17, 1995, he would have filed an FTCA claim within the statutory period. Defendant's delay in processing the section 351 claim, Plaintiff asserts, should be adjusted in Magdalenski's favor.

▮ Equitable tolling is extended only sparingly. As the Supreme Court notes:

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's mis-

conduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) (footnotes and citations omitted). *See also Heckler v. Community Health Services,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984) (noting that "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.") The First Circuit, too, has held that equitable tolling is only appropriate when a plaintiff misses a filing deadline due to circumstances beyond his control. *See Kelley v. Nat'l Labor Relations Bd.,* 79 F.3d 1238, 1248 (1st Cir.1996) (noting that a claimant's unfamiliarity with regulations, in and of itself, is not an excuse for failure to comply with filing deadlines); *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 750 (1st Cir.1994) (holding that equitable tolling should not apply where claimant has not demonstrated that his employer actively misled him, to his detriment); *Wilson v. United States Government,* 23 F.3d 559, 562 (1st Cir.1994) (finding "no basis for extending the exceptional doctrine of equitable tolling to a party who, by all accounts, merely failed to exercise his rights") (*citing Puleio v. Vose,* 830 F.2d 1197 (1st Cir.1987)).[6] The First Circuit directs that five factors should be considered when a court assesses the propriety of equitable tolling: "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Kelley,* 79 F.3d at 1248. *Accord Kale v. Combined Ins. Co. of Am.,* 861 F.2d 746, 752–52 (1st Cir.1988).

---

**6.** This Court, as well, has been reluctant to find a basis for equitable tolling. *See, e.g., Kwatowski v. Runyon,* 917 F.Supp. 877, 885 (D.Mass.1996) (holding that equitable tolling does not apply where claimant was not actively misled by the government); *Caney v. United States Dept. of the*

*Treasury,* 1995 WL 334254, at *4 (D.Mass. May 9, 1995) (unreported) (stating that "[d]efendant's alleged failure to advise Plaintiff about the [possibility of filing an] FTCA [claim] cannot in any way be viewed as fraudulent concealment or misrepresentation").

■ Here, Defendant had no obligation to inform Magdalenski that the claim he filed in 1989 was insufficient for FTCA purposes because of the lack of a sum certain. As described, Magdalenski's 1989 letter made a 351 claim and was neither an FTCA claim nor notice that such a claim would be filed. Moreover, as indicated, Plaintiff's letter accompanying his Form 95 of December 24, 1993, reflects his awareness of the difference between the two claims. Finally, as stated above, there is no indication anywhere in the record that Magdalenski lacked actual or constructive knowledge of FTCA filing requirements or that Defendant gave him erroneous information. While the Court sympathizes with Magdalenski's evident dismay with the length of time it was taking for his section 351 claim to be considered, equitable tolling can not be extended to a claimant on grounds of personal frustration.

## V. CONCLUSION

For the foregoing reasons, this Court recommends that Defendant's motion for summary judgment be ALLOWED.[7]

---

7. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.