**Barry M. TABB and Ann L. Tabb, Plaintiffs**

v.

**JOURNEY FREIGHT INTERNATIONS d/b/a Journey Logistics, et al., Defendants.**

**C.A. No. 07–30009–MAP.**

United States District Court, D. Massachusetts.

Sept. 26, 2008.

Barry E. O'Connor, Springfield, MA, for Plaintiffs.

Brian P. Voke, Cortney L. Merrill, Mark J. Hoover, Campbell, Campbell, Edwards & Conroy, P.C., Philip M. Hirshberg, Morrison Mahoney LLP, Beata Shapiro, Christopher P. Flanagan, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Boston, MA, Thomas P. Schuler, Law Office of Donald E. Phillips, Springfield, MA, for Defendants.

*MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTIONS TO DISMISS* (Dkt. Nos. 25, 31 & 69)

PONSOR, District Judge.

Plaintiff Barry Tabb was injured on January 20, 2004, while unloading large glass panels at his place of employment, Olympia Ice Arena in Springfield, Massachusetts. On January 17, 2007, three days before the statute of limitations would have barred this suit, Tabb and his wife filed this complaint against two defendants, Crystaplex Ice Rink Systems ("Crystaplex"), seller of the panels, and Journey Freight Internations ("Journey"), a Canadian shipping broker. On March 5, 2007, Journey filed its answers to interrogatories and identified Transport Ducampro, Inc. ("Transport"), a Canadian trucking company that delivered the panels to the Olympia Ice Arena, as an indispensable party. Over five months later, on August 7, 2007, Plaintiffs successfully moved to amend their complaint to add Transport and Laurier Glass, Ltd., the manufacturer of the panels, as Defendants.

Subsequently, both Journey and Transport filed Motions to Dismiss, which were referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation.

On May 29, 2008, Judge Neiman issued his Report and Recommendation, to the effect that both motions should be allowed.

Plaintiffs objected only to the portion of the Report and Recommendation that approved Transport's argument in support of its Motion to Dismiss. No objection was filed to the recommended ruling with regard to Journey.

Judge Neiman recommended that the Motion to Dismiss with regard to Transport be allowed for two reasons: (1) Plaintiffs did not comply with the Hague Convention when they served Transport in Canada, and (2) Massachusetts' three-year statute of limitations for tort actions bars Plaintiffs' claims against Transport. The Plaintiffs' objections to the Report and Recommendation raise difficult and troubling questions regarding the sufficiency of service under the Hague Convention, and the court therefore declines to adopt this portion of the Report and Recommendation. On the other hand, Judge Neiman's conclusion regarding Plaintiffs' violation of the statute of limitations is supported by the overwhelming weight of authority. His reasoning fully supports allowance of Transport's motion to dismiss.

As a threshold matter, Plaintiffs must concede that the amended complaint was served upon Transport far beyond the applicable three-year limitation period. Plaintiffs offer two arguments to justify continuation of the suit despite this apparent violation of the statute. First, Plaintiffs argue that they were entitled to relief from the normal statutory limitation by operation of the so-called "discovery" rule, since they were not aware that Transport was involved in the accident that injured Plaintiff until a date less than three years prior to the service of the complaint. Second, Plaintiffs argue that the amended complaint should relate back to the date on which the original, and barely timely, complaint was filed. Judge Neiman properly rejected both of these arguments.

 The discovery rule tolls the running of a statute of limitations when the harm is inherently unknowable, for example in a medical malpractice case where the patient may be unaware of any injury for many years. In Massachusetts, the statute of limitations begins to run when the plaintiff "has (1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of the harm was." *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 557 N.E.2d 739, 742 (1990). Clearly, in this case Plaintiff knew of his injury and of the cause of injury as of January 20, 2004, when he was injured by the falling panels. The three-year limitation period gave him more than adequate time to "undertake[ ] a reasonable inquiry into the source of his injury." *Zamboni v. Aladan Corp.*, 304 F.Supp.2d 218, 224 (D.Mass.2004). Given Plaintiff's clear notice of injury and cause, the discovery rule simply does not apply.

 The availability of the "relation back" doctrine is governed by Fed. R.Civ.P. 15(c). The rule permits an amended complaint to relate back to a party not originally named when that party had actual notice of the action within 120 days of its original filing, such that it would "not be prejudiced in defending on the merits" and if it "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R.Civ.P. 15(c). Neither actual notice during the 120–day period, nor the knowledge of Defendant of any mistake, has been demonstrated here. For this reason, further amplified in Judge Neiman's Recommendation, relation back is not possible.

Based on the foregoing, the court, upon *de novo* review, hereby ADOPTS the Report and Recommendation (Dkt. No. 69), except for the portion regarding the Hague Convention. The Motions to Dis-

miss (Dkt. Nos. 25 & 31) are hereby ALLOWED.

The clerk will set this case for a pretrial scheduling conference before Chief Magistrate Judge Neiman to set a schedule for future proceedings.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO JOURNEY LOGISTICS' and TRANSPORT DUCAMPRO INC.'S MOTIONS TO DISMISS (Document Nos. 25 and 31)*

May 29, 2008

NEIMAN, United States Chief Magistrate Judge.

Barry Tabb ("Tabb"), the Vice President of Operations at the Olympia Ice Arena in Springfield, Massachusetts, was injured on January 20, 2004, when several glass panels he was helping unload from a delivery truck fell on him. He and his wife, Ann Tabb (together "Plaintiffs"), filed this tort action against four distinct corporate defendants: Journey Freight Internations d/b/a Journey Logistics ("Journey Logistics"); Crystaplex Ice Rink Systems, a Division of Athletica ("Crystaplex"); Transport Ducampro, Inc. ("Transport"); and Laurier Glass, Ltd. ("Laurier Glass"). Plaintiffs have since voluntarily dismissed Laurier Glass as a defendant.

Transport and Journey Logistics, each of which is located in Quebec, Canada, have separately filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and/or (6), which motions have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). Transport argues that Plaintiffs have not complied with the Hague Convention requirements for service of process on a foreign defendant and, in addition, that the applicable statute of limitations bars Plaintiffs' claims. Journey Logistics, for its part, argues that this court lacks personal jurisdiction over it. For the following reasons, the court will recommend that both motions be allowed.

## I. BACKGROUND

For present purposes, the following facts, taken primarily from Plaintiffs' complaint, are undisputed. Further facts, particularly those proffered in conjunction with the question of personal jurisdiction, are addressed in the court's discussion below. *See Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir.1992) (when faced with a personal jurisdiction-based motion to dismiss, the plaintiff "must go beyond the pleadings and make affirmative proof") (citations omitted).

As indicated, Tabb, who was employed by the Olympia Ice Arena, was injured on January 20, 2004, when several glass panels he was helping unload from a delivery truck fell on him. (Document No. 23 ("Amended Complaint") ¶¶ 20, 22.) Plaintiffs allege that the glass panels were loaded, packaged, and shipped by Crystaplex through Journey Logistics and that Journey Logistics was engaged by Crystaplex to deliver the shipment of panels to the Olympia Ice Arena. (*Id.* ¶¶ 14, 15.) Plaintiffs further allege that Laurier Glass was the company that arranged the shipment and delivery of the glass panels and that Transport was the carrier of the panels. (*Id.* ¶¶ 16, 17.)

Plaintiffs' original complaint, dated January 17, 2007, was asserted against only Journey Logistics and Crystaplex. On March 5, 2007, Journey Logistics filed its answer. As one of its affirmative defenses, Journey Logistics asserted that Plaintiffs' claims must be dismissed for failure to join Transport as an indispensable party pursuant to Fed.R.Civ.P. 19. (Document No. 4, Eleventh Separate Defense.)

On May 17, 2007, Plaintiffs moved to amend the complaint in order to add Laurier Glass; that motion was denied, however, because of Plaintiffs' failure to abide by Local Rule 15.1. On August 17, 2007, Plaintiffs again moved to amend the complaint, this time to add both Laurier Glass and Transport; that motion was allowed on September 4, 2007 and Plaintiffs' amended complaint was thereafter filed on September 25, 2007. Service of Plaintiffs' amended complaint on Transport is discussed more fully below.

The amended complaint alleges a single cause of action—sounding in both negligence and loss of consortium—against all four defendants. In essence, the amended complaint alleges negligence by Defendants with regard to the "handling, packaging, shipment, loading, unloading and delivering [of] the tempered glass panels." (Amended Complaint ¶¶ 26, 27.)

On October 24, 2007, Laurier Glass filed a "contribution" cross-claim, *see* Mass. Gen. L. ch. 231 B, against the other three defendants. On October 30, 2007, Journey Logistics answered that cross-claim and filed its own contribution cross-claim against Laurier Glass. On November 9, 2007, Journey Logistics amended its cross-claim against Laurier Glass in order to add two "indemnification" causes of action, both of which were also directed solely at Laurier Glass.

Meanwhile, on October 30, 2007, Transport filed its motion to dismiss Plaintiffs' amended complaint in which it argues that the claim against it is barred by Massachusetts' three-year statute of limitations for tort claims and that Plaintiffs' service of process was deficient. Plaintiffs tendered their opposition memorandum on November 9, 2007, and on November 19, 2007, Transport submitted its reply. At oral argument, the court gave the parties an opportunity to file additional memoranda of law on the service of process issue; that briefing was completed by December 12, 2007.

In the interim, on October 18, 2007, Journey Logistics filed its own motion to dismiss in which it alleges that the court lacks personal jurisdiction over it. Plaintiffs countered that motion with an opposition brief that included their own motion for limited discovery, which request the court allowed on November 27, 2007. Oral argument was heard on Journey Logistics' motion to dismiss at the end of the limited discovery period on February 28, 2008. It became clear at the time, however, that Plaintiffs had not supplemented their opposition to Journey Logistics' motion. Accordingly, the court gave Plaintiffs yet another opportunity to file a supplemental brief, which they did on March 7, 2008. Journey Logistics filed a reply brief on March 19, 2008.

## II. DISCUSSION

Having sifted through the multiple briefs and related documents, the court is now poised to make a recommendation with regard to the two outstanding motions. The court will start with Transport's motion, the one it heard first, and then turn to Journey Logistics' motion. In the end, the court will recommend that both motions be allowed.

### A. TRANSPORT'S MOTION TO DISMISS

Transport's motion to dismiss raises two arguments: (1) that the court lacks personal jurisdiction over it insofar as Plaintiffs have not complied with Hague Convention requirements for service of process on a foreign defendant; and (2) that Plaintiffs' claim is barred by Massachusetts' three-year statute of limitations for tort claims.

#### 1. Service of Process

Transport seeks dismissal for lack of personal jurisdiction based on insufficient service of process under the Hague Convention pursuant to Rule 12(b)(2). It appears to the court, however, that Transport is actually making a service of process argument under Rule 12(b)(4) or (5), not a personal jurisdiction argument under Rule 12(b)(2). In any event, Transport's argument provides significant support for dismissal.

First, the facts: A single copy of the summons and amended complaint, in English only, was delivered to Transport in Quebec on October 9, 2007. Although Transport initially alleged that the summons and amended complaint were *mailed* to Transport and received by Ginette Vallière, a newly-hired trainee who was not authorized to receive legal documentation on Transport's behalf, Plaintiffs note that the summons and amended complaint were actually *hand-delivered* by Lyette Bonin, a "Hussier/Bailiff," to Alain Dubé, an officer of Transport. Transport does not dispute this correction but argues that it is of no moment.

Now, the law: It is undisputed that Canada has ratified and implemented the provisions of the Hague Convention and that "to make effective service in a country that has joined the Hague Convention, a plaintiff must follow the provisions of the treaty." *Marcantonio v. Primorsk Shipping Corp.*, 206 F.Supp.2d 54, 58 (D.Mass. 2002). According to Transport, the Hague Convention mandated service of process through the requirements of the Central Authority of the province in which Transport has a place of business, *i.e.*, Quebec. Transport further asserts that the Central Authority of Quebec requires, *inter alia*, that service be made (1) directly through the Central Authority, (2) in duplicate and (3) with the summons and complaint translated into French. Not one of these requirements, Transport contends, has been met here.

In its initial opposition, Plaintiffs relied exclusively on *Dimensional Communs., Inc. v. OZ Optics Ltd.*, 218 F.Supp.2d 653 (D.N.J.2002), and argued that "alternate channels of service" other than directly through a province's Central Authority— *e.g.*, service by a local "hussier" or "bailiff"—may be acceptable. Plaintiffs, however, did not address Transport's other points: that service was not in duplicate or that the summons and amended complaint were not translated into French. Regarding the latter point, Transport noted as well that, in Quebec, unlike in Ontario which was the locus of the *Dimensional* case, the official language is French and the Central Authority of Quebec requires translation of all process documents into French.

Moreover, Plaintiffs provide no compelling assertion in their post-argument memorandum that their initial service upon Transport was acceptable. Granted, Plaintiffs indicate that, on December 6, 2007, they attempted to serve Transport again, this time in French. But again, that service was by a local hussier, not directly by the Central Authority. There also appears to be no proof that Plaintiffs ever served Transport in duplicate.

In short, there remain several problems with Plaintiffs' attempted service upon Transport. While these problems might appear to be relatively minor, they do amount to a violation of the Hague Convention and support allowance of Transport's motion to dismiss. As indicated below, however, the court need not rely on such grounds to dismiss the claim against Transport insofar as its statute of limitations argument, in and of itself, fully justifies allowance of the motion.

### 2. *Statute of Limitations*

Transport's statute of limitations argument is fairly straightforward. According to Transport: Plaintiffs' cause of action is a tort claim subject to a three-year limitations period, *see* Mass. Gen. L. ch. 260, § 2A; that claim accrued on the date of the incident, January 20, 2004; *ergo,* Plaintiffs' attempt to sue Transport in the August 17, 2007 amended complaint is nearly seven months too late. As support, Transport cites, *inter alia, O'Rourke v. Jason, Inc.,* 978 F.Supp. 41 (D.Mass.1997) (report and recommendation by the undersigned adopted by District Judge Michael A. Ponsor on September 10, 1997).

Plaintiffs make essentially two arguments in opposition. First, Plaintiffs assert that they neither knew nor should of known of Transport's involvement at the time of the incident since Journey Logistics (not Transport) was listed as the freight carrier on the bill of lading. Second, Plaintiffs contend that their amended complaint—in which they named Transport for the first time—ought to relate back to the date of the original complaint, January 17, 2007, which itself was timely, albeit by only three days. As support, Plaintiffs cite a variety of decisions from the Massachusetts Supreme Judicial Court, *e.g., Wadsworth v. Boston Gas Co.,* 352 Mass. 86, 223 N.E.2d 807 (1967), *MacPherson v. Boston Edison Co.,* 336 Mass. 94, 142 N.E.2d 758 (1957), *Cohen v. Levy,* 221 Mass. 336, 108 N.E. 1074 (1915), and *McLaughlin v. West End St. Ry.,* 186 Mass. 150, 71 N.E. 317 (1904).

Plaintiffs' first argument appears to be a "discovery" argument, namely, that it reasonably took them a while to discover the identity of Transport, *i.e.,* not until they received a May 21, 2007, letter from Journey Logistics' counsel identifying Transport as "the carrier." In response, Transport describes this assertion as somewhat disingenuous, citing Journey Logistics' March 5, 2007 answer and affirmative defenses in which it asserted that Transport was an "indispensable party."

Regardless, this court believes that its analysis in *O'Rourke* eviscerates Plaintiffs' discovery argument. "The important point," the court stated, "is that a statute of limitations starts to run when an event has occurred which was reasonably likely to put a plaintiff on notice that *someone* may have caused his injury." *See id.,* 978 F.Supp. at 52–53 (emphasis added) (citing cases). The court also relied on the Supreme Judicial Court's statement that, in discovery cases, "a plaintiff must 'have (1) knowledge or sufficient notice that he was harmed and (2) knowledge or sufficient notice of what the cause of the harm was.'" *Id.* (quoting *Bowen v. Eli Lilly & Co.,* 408 Mass. 204, 557 N.E.2d 739, 742 (1990)). Here, as in *O'Rourke,* Plaintiffs had both. Tabb certainly knew he was injured on January 20, 2004. He also knew at the time that the cause of the harm was the shipped glass he was helping to unload. Accordingly, Plaintiffs' "discovery" argument simply does not save their untimely claim against Transport. *See also Riley v. Presnell,* 409 Mass. 239, 565 N.E.2d 780, 789 (1991) ("[W]hen a person with ordinary wisdom and judgment would have been able to know that the conduct or product of another may have harmed him or her, the statutory limitations period has begun to run.").

Plaintiffs' second argument, based on the "relation-back" doctrine, is a bit stronger. *See* Fed.R.Civ.P. 15(c).[1] After

---

1. In pertinent part, the version of Rule 15(c) in effect at all relevant times provides as follows:

(c) **Relation Back of Amendments.** An amendment to a pleading relates back to the date of the original pleading when:

careful analysis, however, the court is confident that the doctrine does not save Plaintiffs' facially untimely claim.

For one thing, the text of Rule 15(c) does not favor Plaintiffs' position since, in pertinent part, it speaks only of the relation-back of an amendment that "changes the party or the naming of the party." That is not the situation here. As discussed more fully below, Transport was not *changed—i.e., substituted*—for one of the original defendants. Rather, both Journey Logistics and Crystaplex, the originally-named defendants, remain, with Transport, as defendants in the amended complaint. Since there was no change of defendants, Rule 15(c) would not appear to apply.

Nonetheless, Plaintiffs argue that the Supreme Judicial Court's decision in *Wadsworth* calls for a different conclusion. There, the plaintiffs brought a complaint in negligence against their landlords. *Id.,* 223 N.E.2d at 809 n. 3. After the original limitations period had run, the plaintiffs sought to add Boston Gas Co. *See id.* at 809. According to the Supreme Judicial Court, the plaintiffs' amendment adding Boston Gas Co. was permissibly allowed by the trial court, even though "[t]he facts upon which the [trial] judge relied in allowing the amendment[ ] [were] not set out in the record." *Id.* Wrote the court:

> There is ample authority for the proposition that where an action has been commenced before the statute of limitations has run, a plaintiff may be allowed to substitute one defendant for another after the statute of limitations has run against the proposed substitute defendant. After the amendment has been allowed and the defendant brought into court by due process, the substitution relates back to the date of the writ and makes the substituted defendant a party from that date. *We discern no difference in principle between permitting a plaintiff to substitute a defendant and permitting a plaintiff to add a defendant.* The effect in both cases is that a different defendant is called upon to defend the action. We hold, therefore, that the propriety of allowing the amendment in both cases is governed by the same rules.

*Id.* at 809 (citations omitted) (emphasis added). In short, Plaintiffs assert, *Wadsworth* supports their argument that, even though they *added* a new defendant late, they can relate that addition back to the original filing date.

This court disagrees. As Transport asserts: (1) *Wadsworth* is an irregular case, both factually and procedurally; (2) the instant case is more akin to recent cases that denied the addition of new defendants after the limitations period had run; (3) the cases relied upon by *Wadsworth* are really *substitution* cases (not cases involving the *addition* of parties); and (4) even *Wadsworth* recognizes the court's discretion in such matters. Accordingly, there is little to support Plaintiffs' relation-back ar-

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provi-

sion (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

gument. *See particularly Burns v. Turner Constr. Co.*, 265 F.Supp. 768, 770 (D.Mass.1967) (noting that while "[t]he Massachusetts statute does permit the substitution of parties to a cause of action," it does not appear to "permit the addition of new parties") (citing cases).

There is, in addition, a more fundamental problem with Plaintiffs' reliance on *Wadsworth* and its forebears, *i.e.*, those cases construed *Massachusetts* Rule 15(c), not the *federal* counterpart quoted above.[2] This distinction is quite significant. As the official notes to Massachusetts Rule 15(c) point out, "Massachusetts practice is more liberal than Federal Rule 15(c) in allowing amendments adding or substituting party defendants after expiration of the period of limitations." Mass. R. Civ. P. 15, 1973 Reporter's Notes. In addition, while "[t]he Massachusetts rule is set out in detail in [the] *Wadsworth*" quote above, *id.*, the federal rule specifies several "mechanical requirements" that must be met as well. *Wilson v. United States Gov't*, 23 F.3d 559, 562 (1st Cir.1994). For example, the federal rule, unlike its Massachusetts counterpart, requires that the new party within the time for service of process—*i.e.*, 120 days (*see* Fed.R.Civ.P. 4(m))—"received such notice of the action that the party will not be prejudiced in maintaining a defense on the merits" and "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

In the instant case, neither of the federal rule's "mechanical requirements" was met. There is no evidence that Transport received any notice of the original complaint dated January 17, 2007, within 120 days. Similarly, there is no evidence that, within that time, Transport knew or should have known that any action would have been brought against it. Accordingly, Fed.R.Civ.P. 15(c) does not save Plaintiffs' untimely claims. *See Wilson*, 23 F.3d at 562–63 (refusing to allow Fed.R.Civ.P. 15(c) to save complaint against new party where the plaintiff failed to meet at least one of the rule's mechanical prerequisites).

In addition, as the First Circuit reiterated in *Wilson*, "amendment of a complaint with relation back is generally permitted in order to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued." *Id.* at 563 (citations, internal quotation marks and alterations omitted). "But," the court continued in language particularly apt here, "a new defendant cannot normally be substituted or added after the statute of limitations has run." *Id.* (citations and internal quotation marks omitted). "Put another way," the court stated, "Rule 15(c) permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, *there is a lack of knowledge of the proper party.*" *Id.* (citations and internal quotation marks omitted) (emphasis supplied by First Circuit).

In this case, as in *Wilson*, "there was no 'mistake concerning the identity of the proper party,' as required by Rule 15(c)." *Id.* Rather, at best, Plaintiffs "merely lacked knowledge of" Transport. Like the

---

**2.** In full, the Mass. R. Civ. P. 15(c) provides as follows:

(c) **Relation Back of Amendment.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading.

First Circuit, this court has "no doubt that Rule 15(c) is not designed to remedy such mistakes." *Id.* *See also Leonard v. Parry*, 219 F.3d 25, 31 (1st Cir. 2000) (noting that *Wilson* "is a case in which the plaintiff ... sued the wrong party" and that Rule 15(c) was not designed to rectify such a situation). *Cf. Broner v. Flynn*, 311 F.Supp.2d 227, 237 (D.Mass.2004) (following "overwhelming number of circuit courts of appeal" to hold that "Rule 15(c)'s relation back provisions do not apply where a plaintiff seeks to [sue previously unidentified] defendants"). In short, Plaintiffs had three years to discover Transport's identity but did not.[3]

At bottom, to bring Transport in now would undermine the very purpose of the applicable statute of limitations. *See Case of Alves*, 451 Mass. 171, 884 N.E.2d 468, 482 (2008) ("Statutes of limitations provide many well-recognized benefits for the administration of justice, including allowance for the temporal finality necessary for the orderly conduct of human affairs, and suppressing fraudulent and stale claims.") (citations, internal quotation marks, and alterations omitted). And, in any event, *Wilson* and the related state cases do not provide the proper federal procedural basis for Plaintiffs to add Transport as a defendant now. Accordingly, this court has little choice but to recommend that Transport's motion to dismiss be allowed on statute of limitations grounds.

## B. JOURNEY LOGISTICS' MOTION

Journey Logistics' motion takes a different tack. It argues that the court lacks personal jurisdiction over it pursuant to Rule 12(b)(2). For the reasons which follow, the court agrees.

### 1. *Standard of Review*

In response to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of proving that jurisdiction lies with the court. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998) (citing cases). In particular, the plaintiff must show that the state's long-arm statute grants jurisdiction and that the exercise of jurisdiction is consistent with the Due Process clause of the United States Constitution. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir.2002). To meet this burden, the plaintiff "must go beyond the pleadings and make affirmative proof" of material jurisdictional facts. *Boit*, 967 F.2d at 675 (citations omitted). It should be noted, however, that the court "does not act as a fact finder; to the contrary, it ascertains only whether the facts, duly proffered, fully credited, support the exercise of personal jurisdiction." *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 84 (1st Cir.1997).

### 2. *Additional Jurisdictional Facts*

Plaintiffs offered virtually no jurisdictional facts in their original opposition to Journey Logistics' motion to dismiss. At most, Plaintiffs appended a bill of lading which appears to be dated January 16, 2004. (See Document No. 33, Ex. B.) That document—written in French and accompanied by the November 5, 2007 affidavit of Barry Tabb—seems to list Laurier Glass as the "shipper" of glass to the Olympia Ice Center. (*Id.*) At the top right corner of the document "Journey Logis-

---

**3.** The First Circuit also refused to equitably toll the limitations period in *Wilson*. Although Plaintiffs have not made an equitable tolling argument here, there is "nothing in the record" to indicate that, had the argument been pursued, the identity of Transport could not have been accomplished via "routine discovery procedures." *Id.*, 23 F.3d at 562. Hence, as in *Wilson*, equitable tolling would not apply.

tique" is identified as the "transporteur/carrier." (*Id.*)

In their supplemental memorandum, Plaintiffs purport to add more facts. But in the section of their memorandum entitled "Facts," Plaintiffs cite only the November 5th affidavit of Barry Tabb and the previously-submitted bill of lading. (See Document No. 67 at 1–2.) To be sure, Plaintiffs attach a few other documents to which they make vague references within the body of their memorandum, *e.g.*, (1) a document, in French, entitled "Bon de Commande Pour Transport" that lists "Journey" as a "Transporteur," (2) Journey Logistics' responses to Plaintiffs' request for production of documents, (3) what appear to be nineteen separate "carrier confirmation" documents from Journey Logistics dated between January 20, 2003 and January 20, 2004, each of which, in French, appears to list a Massachusetts address for delivery, and (4) what seems to be a "price history" of the nineteen carrier confirmations. (*See id.*, Exhibits.) None of these documents is accompanied by an affidavit, however, so it is impossible for the court to gauge their context. *See* Local Rule 7.1(B)(1), (2) (observing that "[a]ffidavits *and* other documents" upon which motions or oppositions are based should be filed together) (emphasis added).

In any event, Journey Logistics cites multiple facts in support of its argument that personal jurisdiction is lacking—supported, in turn, by the affidavit of its vice president, Martin Fortier—none of which have been disputed by Plaintiffs in any way. For example, Journey Logistics avers, without dispute, that it is simply a shipping *broker* that does not package, handle, ship, load, or unload the shipments. (Document No. 26 at 2.) Journey Logistics further avers, again without dispute, that it does not do any business in

Massachusetts and, more precisely, that it has never maintained an office, business address, employees, agents or telephone numbers in Massachusetts, owned or leased real property in Massachusetts, filed a corporate tax return in Massachusetts, or advertised in Massachusetts through local newspapers, magazines, radio or television. (*Id.*) Finally, Journey Logistics avers that, as a shipping broker and contrary to the allegations in Plaintiffs' complaint, it "did not package, handle, ship, load, or unload the tempered glass panels that allegedly fell on top of Barry Tabb." (*Id.* at 3.)

Realizing, however, that Plaintiffs were focusing on the bill of lading—in an apparent effort to cast it as the entity that *delivered* the glass panels—Journey Logistics submits still other supporting facts in its reply memorandum. Those facts are undisputed as well. For example, Journey Logistics points out that *Transport* has avowed "that *its* name was clearly displayed on the tractor which made the delivery." (Document No. 50 at 2 (emphasis added) (citation and internal quotation marks omitted).) Journey Logistics also notes that Plaintiffs, in their opposition brief, conceded that Journey Logistics acted "as the broker" and that their complaint involved, not brokering, but "the faulty shipment and delivery of the glass itself." (*Id.* at 2–3.) Finally, Journey Logistics, again through Martin Fortier, avers that the bill of lading upon which Plaintiffs rely, was neither filled out by Journey Logistics nor signed by any of its representatives, agents, or employees. (*Id.* at 3.)

### 3. *Analysis*

As indicated, Plaintiffs must show both that the Massachusetts long-arm statute grants jurisdiction and that the exercise of jurisdiction is consistent with due process.

*Daynard,* 290 F.3d at 52. Here, the parties focus initially on the due process concerns. Accordingly, the court does likewise.

### a. *Due Process*

Due process requires the court to find either that it has "specific jurisdiction" over the defendant or "general jurisdiction." *See generally Harlow v. Children's Hosp.,* 432 F.3d 50, 57 (1st Cir.2005). Specific jurisdiction exists when a defendant's contacts with the Commonwealth "arise out of" or "relate to" the plaintiff's particular cause of action. *See Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995). General jurisdiction may be found when a defendant has "continuous and systematic" contacts with Massachusetts, even though those contacts do not relate to the particular cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Here, Plaintiffs conceded at oral argument that this court has no general jurisdiction over Journey Logistics. In the court's view, moreover, Journey Logistics has the stronger argument on the specific jurisdiction issue.

■ The First Circuit uses a three-part test for determining whether a court has specific jurisdiction over a defendant:

> *First,* the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. *Second,* the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. *Third,* the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Sawtelle,* 70 F.3d at 1389 (emphasis added) (citing cases). *See also United States v.*

*Swiss Am. Bank, Ltd.,* 274 F.3d 610, 620–21 (1st Cir.2001). The court will address each part in turn, mindful that "[c]entral to each step ... are the contacts which are attributable to [the] defendant." *Sawtelle,* 70 F.3d at 1389.

■ With respect to the first prong of the analysis, relatedness, Journey Logistics argues that the claims do not "arise out of, or relate to" its Massachusetts activities. *See Edwards v. Radventures, Inc.,* 164 F.Supp.2d 190, 197 (D.Mass.2001) (citation and internal quotation marks omitted). The court agrees. As Journey Logistics points out, it did not package, handle, ship, load, unload, deliver, or otherwise come into contact with the shipment of the tempered glass panels that are the subject of Plaintiffs' amended complaint. Moreover, any contracts Journey Logistics entered into were in Canada for services to be completed in Canada.

In addition, the undisputed evidence reveals that *Transport* may have *delivered* the panels, while *Journey Logistics,* at most, only *brokered* the deal, a concern not related to the instant claim nor to any contact with Massachusetts. Indeed, as noted previously in the context of Transport's motion to dismiss, Plaintiffs seem to now want to cast Transport (not Journey Logistics) as the carrier. In fact, Plaintiffs made that very allegation in their amended complaint. (See Amended Complaint ¶ 17 ("At all times complained herein, TRANSPORTS DU CAM PRO, INC., was the carried [sic] of certain shipment and delivery in connection with the tempered glass panels.").) As the court noted at oral argument, Plaintiffs cannot have it both ways.

Likewise, Plaintiffs have not demonstrated the second, purposeful availment, prong of the specific jurisdiction due process analysis. This prong "is designed to

assure that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Rather, "[t]he plaintiff must show that [the] defendant voluntarily and purposefully directed its activity to the forum state so that the defendant could foresee being hauled into court." *Levin v. Harned,* 304 F.Supp.2d 136, 175 (D.Mass.2003) (citing *Swiss Am. Bank,* 274 F.3d at 624–25).

Here, as Journey Logistics points out, nothing in the record before the court even remotely suggests that it voluntarily or intentionally directed its activities at Massachusetts such that it could reasonably foresee appearing in court here. As supported by the undisputed facts, Journey Logistics simply brokered shipments for other parties in Canada and did not at any time purposefully avail itself of the privilege of conducting activities in this forum. It is also undisputed that Journey Logistics has never maintained an office, business address, employees, agents or telephone numbers in Massachusetts, owned or leased real property in Massachusetts, filed a corporate tax return in Massachusetts, or advertised in Massachusetts through local newspapers, magazines, radio or television.

■ Finally, as to the third prong of the analysis, the court agrees with Journey Logistics that making it defend claims in Massachusetts would be unreasonable in light of the "Gestalt" factors. *See Saw-*

*telle,* 70 F.3d at 1389. The Gestalt factors are: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Noonan v. Winston Co.,* 135 F.3d 85, 89 n. 2 (1st Cir.1998). However, these five factors come into play only if the first two prongs of the specific jurisdiction test are fulfilled. *See United Elec., Radio & Mach. Workers of America v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992). As is obvious, Plaintiffs' failure to demonstrate the necessary relatedness and purposeful availment prongs of that test "eliminates the need to even reach the issue of reasonableness." *Levin,* 304 F.Supp.2d at 146. Accordingly, the court believes, the exercise of jurisdiction over Journey Logistics is not supported by due process.

### b. *Long–Arm Statute*

■ Concluding as the court does that due process does not support the exercise of jurisdiction over Journey Logistics, it is unnecessary to reach Journey Logistics' long-arm statute argument. Nevertheless, the court will briefly address that argument if for no other reason than to provide a complete report and recommendation.

Journey Logistics' argument is based on Mass. Gen. L. ch. 223A, § 3.[4] As Journey

---

4. Massachusetts' long-arm statute provides in relevant part as follows:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
 (a) transacting any business in this commonwealth;

(b) contracting to supply services or things in this commonwealth;
(c) causing tortious injury by an act or omission in this commonwealth; [or]
(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or de-

Logistics notes, Plaintiffs, for the same reasons noted above in the due process analysis, cannot show that their cause of action is one "arising from" Journey Logistics' "transacting any business in" Massachusetts, "contracting to supply services or things" here, or "causing tortious injury by an act or omission in" this forum. Mass. Gen. L. ch. 223A, § 3(a)-(c). Nor do Plaintiffs come close to demonstrating that Journey Logistics "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in" Massachusetts; thus, it cannot be deemed to have "caus[ed] tortious injury in this commonwealth by an act or omission outside this commonwealth." *Id.*, § 3(d).

Granted, Plaintiffs also refer to Mass. Gen. L. ch. 223, § 38, which, in pertinent part, permits service of process on a foreign corporation that is "engaged in or soliciting business in the commonwealth, permanently or temporarily." However, there is absolutely no evidence that Journey Logistics—a foreign corporation that, at most, only brokered the deal—"so affected the transaction at issue as to make Massachusetts an appropriate forum" for resolution of the claim against it, *Mas*

*Marques v. Digital Equip. Corp.*, 637 F.2d 24, 28 (1st Cir.1980) (construing Mass. Gen. L. ch. 223, § 38), yet another reason why Journey Logistics' motion to dismiss should be allowed.

### III. CONCLUSION

For the reasons stated, the court recommends that both Journey Logistics' and Transport's motions to dismiss be ALLOWED.[5]

DATED: May 29, 2008

rives substantial revenue from goods used or consumed or services rendered, in this commonwealth....
Mass. Gen. L. ch. 223A, § 3(a)-(d).

5. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further ad-

vised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.